1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| Seattle Cider Company, LLC, a Washington limited liability company; Two Beers Brewing Company, LLC, a Washington limited liability company; and Agrial USA, Inc., a Delaware Corporation;<br><br>                    Plaintiffs,<br><br>        v.<br><br>Joel VandenBrink, an individual; and PNW Holdco LLC, a Washington limited liability company;<br><br>                    Defendants. | No. 2:19-cv-1313<br><br>COMPLAINT |

18

19

20

21

22

23

24

25

26

    In 2016, Defendant Joel VandenBrink sold Seattle Cider Company and Two Beers Brewing Company (collectively, "Seattle Cider") to Plaintiff Agrial USA, Inc. ("Agrial"). Agrial is a subsidiary of Agrial S.C.A., an agricultural cooperative of some 13,000 family farms based in Normandy, France. Agrial agreed to pay between approximately $20,375,000 and $27,000,000 for Seattle Cider depending on how the business performed after the sale. After the sale, VandenBrink stayed on at Seattle Cider as CEO. In the middle of 2018, it became apparent to VandenBrink that Seattle Cider was not going to hit the numbers needed to trigger the higher purchase price, and this was going to personally cost him millions of dollars. So, in breach of his contract and his fiduciary duties as Seattle Cider's CEO, VandenBrink developed a secret plan to

COMPLAINT (No. 2:19-cv-1313) –1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

game the numbers and then fraudulently concealed his plan until he and PNW Holdco received an additional, unearned payment of more than $6.8 million. Seattle Cider and Agrial bring this lawsuit to recover this wrongly obtained overpayment along with other associated damages from VandenBrink and his company, PNW Holdco.

## PARTIES

1.      Plaintiff Seattle Cider Company, LLC is a Washington limited liability company, whose sole member is Plaintiff Agrial USA, Inc.

2.      Plaintiff Two Beers Brewing Company, LLC is a Washington limited liability company whose sole member is Agrial USA, Inc.

3.      Plaintiff Agrial USA, Inc. is a Delaware Corporation with its principal place of business in Caen, France.

4.      Defendant Joel VandenBrink is an individual residing in Seattle, Washington.

5.      Defendant PNW Holdco Company LLC ("PNW Holdco") is a Washington limited liability company with its principal place of business in Seattle, Washington.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction of this action under 28 U.S.C. § 1332, there being complete diversity of citizenship between the parties and the matter in controversy exceeding the sum or value of $75,000, exclusive of interest and costs.

7.      Plaintiffs Seattle Cider Company and Two Beers Brewing Company are citizens of France and Delaware because the sole member of each company is PNW Beverage Holdings, LLC, which is a citizen of France and Delaware.  PNW Beverage Holdings, LLC is a citizen of France and Delaware because its sole member, Agrial USA, Inc., is a citizen of France and Delaware.

8.      Plaintiff Agrial USA, Inc., is a citizen of France and Delaware because it is incorporated in Delaware and has its headquarters in Caen, France.

COMPLAINT (No. 2:19-cv-1313) –2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

9.      Defendant VandenBrink is a citizen of Washington because he is domiciled in Seattle, Washington.

10.     Defendant PNW Holdco is a citizen of the states of Washington, Indiana and Arizona and of the nation of Germany because all of its members are individuals who are domiciled in one of these four jurisdictions.

11.     Plaintiffs seek to recover an overpayment to PNW Holdco of approximately $6.8 million and related and other damages from VanderBrink.  Thus, the amount in controversy exceeds the jurisdictional minimum of $75,000.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because both of the defendants reside within the Western District of Washington and because a substantial part of the events and omissions giving rise to the claims alleged in this complaint occurred within the Western District of Washington.

**PARTIES**

13.     Agrial S.C.A. is an agricultural cooperative comprised of some 13,000 family farms and is based in Normandy, France. The family farm members of Agrial S.C.A. produce fresh and natural fruits, vegetables, dairy products, meat and natural beverages, including the traditional dry French ciders of Normandy and Brittany.

14.     Plaintiff Agrial USA, Inc. ("Agrial") is a United States subsidiary Agrial S.C.A. Agrial and its parent company are both based in the city of Caen in Normandy.

15.     Defendant Joel VandenBrink is the founder and former CEO of Seattle Cider Company and Two Beers Brewing Company.

16.     VandenBrink is the managing member of Defendant PNW Holdco.  PNW Holdco is a Seattle based limited liability company that was formed for the purpose of selling Seattle Cider Company and Two Beers Brewing to Agrial in 2016.  For ease of reference, this complaint will sometimes refer to the combined business of Seattle Cider and Two Beers Brewing collectively as Seattle Cider.

COMPLAINT (No. 2:19-cv-1313) –3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**ALLEGED FACTS**

17.     On July 29, 2016, Vanderbrink, PNW Holdco LLC, Seattle Cider Company LLC, Two Beers Brewing Company LLC and Agrial (then known as Eclor USA, Inc.), entered into a Membership Interest Purchase Agreement (the "Purchase Agreement") whereby Agrial agreed to purchase 100% of the membership interests in Seattle Cider.  The transaction closed on August 31, 2016.  The purchase price included two formula earn-out payments, one in 2019 and one in 2021, based on Seattle Cider's financial performance in 2018 and 2020, respectively. Under the Purchase Agreement, the final purchase price would, subject to various contractual adjustments, range from a low of $20,375,000 to a high of $27,000,000, depending on how the business performed after the purchase by Agrial.

18.     Ancillary to the purchase, VandenBrink entered into an employment agreement to serve as CEO of Seattle Cider (the "Employment Agreement"). In the Employment Agreement, VandenBrink committed to perform his duties "in a manner consistent with proper and ethical business practices and consistent with the best interests of" Seattle Cider. And while VandenBrink retained substantial authority and discretion in the operation of Seattle Cider, the Employment Agreement required him to obtain prior approval from Agrial before entering into any agreements with third parties that were "outside the normal scope of activity, or under conditions other than those in the normal course of business."

19.     Prior to selling Seattle Cider to Agrial, in the Spring of 2016, VandenBrink prepared projections for upcoming years that he shared with Agrial and used in his effort to increase the sale value the business.  For 2018, VandenBrink projected sales of more than $17 million and Earnings Before Interest, Taxes, Depreciation and Amortization ("EBITDA") of $5.77 million. During the negotiation, VandenBrink urged Agrial to value the business based on these projections. Relying in part on VandenBrink's representations, Agrial agreed to a potentially higher purchase price that could reflect VandenBrink's optimistic forecasts. But the corresponding higher price would be only earned if Seattle Cider was able to achieve, at a

COMPLAINT (No. 2:19-cv-1313) –4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

145368944.2

1    minimum, a more modest growth forecast of at least $3,000,000 EBITDA in 2018 and at least

2    $4,000,000 EBITDA in 2020.

3        20.    The final purchase formula worked like this. Agrial was to pay $12,375,000, plus

4    various adjustments, at the closing in August 2016.  Agrial would then make two guaranteed

5    minimum payments of $2,000,000 at the end of the 2018 fiscal year and $6,000,000 at the end of

6    the 2020 fiscal year, each less various adjustments.  With the two minimum earn-out payments,

7    the guaranteed total minimum price Agrial paid for Seattle Cider was $20,375,000, not counting

8    for adjustments. However, if Seattle Cider's EBITDA for the 2018 and 2020 fiscal years

9    exceeded the respective $3,000,000 and $4,000,000 targets, the two earn-out payments could

10   increase up to an agreed cap of $14,625,000, for a maximum total sale price of up to

11   $27,000,000.

12       21.    The difference between hitting and missing the 2018 target was significant.  For

13   the 2018 fiscal year, if the EBITDA was less than $3,000,000, the first earn-out payment would

14   be $2,000,000, less agreed-to adjustments.  However, if the 2018 EBITDA was $3,000,000 or

15   more, then the first earn-out payment would increase substantially—specifically, instead of

16   receiving a payment of $2,000,000, less adjustments, PNW Holdco would receive .23 of ten

17   times the actual EBITDA with a further adjustment made to account for Seattle Cider's cash

18   position. To illustrate, not counting for contractual adjustments, if the 2018 EBITDA was exactly

19   $3,000,000 and the cash position of Seattle Cider was neutral, the first earn-out payment would

20   jump from $2,000,000 to $6,900,000 and if EBITDA was more than $3,000,000, the earn-out

21   would continue to increase by an additional $230,000 for each $100,000 of EBITDA over

22   $3,000,000.

23       22.    VandenBrink owned a little less than 70% of PNW Holdco and he would

24   personally receive a corresponding percentage of any earn-out payment.

25       23.    Seattle Cider has not performed as well as VandenBrink projected when he was

26   negotiating the sale to Agrial.  Seattle Cider's 2017 EBITDA was less than $1.9 million and this

COMPLAINT (No. 2:19-cv-1313) –5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

trend continued into 2018. By May 2018, it was becoming apparent to VandenBrink that Seattle Cider was not going to meet the $3,000,000 EBITDA target unless sales increased substantially. In July, VandenBrink ran the numbers again. Even with optimistic projections, Seattle Cider was trending to end the 2018 year below $10 million in sales and EBITDA was projected to be below $2.5 million, more than $500,000 below the threshold needed to trigger the increased earn-out payment.

24.     Recognizing that Seattle Cider was not going to hit the EBITDA target, VandenBrink developed a secret plan to game the numbers. The core of this plan involved a secret side deal with Seattle Cider's largest distributer. VandenBrink persuaded the distributor to accept huge shipments at the end of 2018, roughly triple the normal shipments, so that Seattle Cider could book the sales during the 2018 fiscal year, thereby seeming to increase the 2018 EBITDA without any corresponding increase in actual sales to consumers. When the distributor raised concerns about taking on so much inventory, VandenBrink promised that Seattle Cider would bear all the costs associated with the additional inventory. What mattered was that the costs be pushed to 2019, when they would not count towards the earn-out calculation. Among other things, VandenBrink promised to take product back, to pay for substantial discounts, and to reduce or eliminate shipments, with Seattle Cider to bear 100% of those future costs.

25.     On January 14, 2019, VandenBrink knowingly and intentionally submitted a false financial report to Agrial greatly overstating Seattle Cider's true EBITDA for 2018. The report included such false and misleading statements as "Cider had another great month," and "cider carried the load for the Company." In truth, cider sales were flat in December and in the previous months and the seeming sales growth was entirely attributable to VandenBrink's secret side deal with the distributor.

26.     The late 2018 shipments added more than $800,000 to Seattle Cider's 2018 EBITDA.  Without this secret side deal, Seattle Cider's 2018 EBITDA would have been just what VandenBrink had projected in July, a little less than $2.5 million and the 2018 earn-out

COMPLAINT (No. 2:19-cv-1313) –6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

payment would have been $2,000,000, less adjustments.  With these illegitimate sales added in, VandenBrink falsely reported 2018 EBITDA of more than $3.3 million, which generated a 2018 earn-out payment of over $8.8 million, less adjustments.

27.     VandenBrink was able to conceal his plan by telling Agrial that the sales were the result of legitimate business growth—e.g., "Cider had another great month"—and by continuing to deliver excess shipments to the distributor through the first three months of 2019, thereby delaying Agrial's discovery of the scheme until after the earn-out was paid.

28.     By April, 2019, the distributor had built up so much inventory that it told VandenBrink it would not accept any more shipments.  A distributor employee wrote to VandenBrink:  "Joel, We need to speak live tomorrow. As of this point, I have instructed purchasing to stop buying any inventory from Seattle Cider or Two Beers until we get this issue resolved. We spoke in February about the fact that we already had nine months of inventory and yet you still shipped ten more loads in March and one in April. We have 493 days of supply of semi-sweet. This is far beyond any agreement we made. When we spoke about this last October, we agreed to take up to four months of inventory to help you hit your number and get your paycheck. I need you to find a solution to take us back to a reasonable DOH [Days on Hand] immediately that will result in zero cost to [us]. I want to be very clear that [my boss] is absolutely beside himself on this issue and we're looking for IMMEDIATE resolution."

29.     VandenBrink wrote back immediately:  "I promise that the issue will be resolved at no cost to [you]. That's always been my agreement and my word."

30.     Recognizing that his scheme was about to be uncovered, over the next few weeks, VandenBrink frantically pressed Agrial to make the earn-out payment, while telling Agrial that the significant drop in April sales was due to production issues, rather than the distributor's refusal to accept any more inventory. For example, when the March numbers were reported, rather than disclose the increasingly urgent issue with the massive overstock at the distributer,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

VandenBrink emailed Agrial a different and false explanation: "It was a really tough month around here last month, a month like I haven't seen in a while from a production standpoint."

31.    VandenBrink also continued to submit budgets and projections for 2019 that he knew were false and misleading because they did not account for the massive inventory build-up he had secretly implemented. VandenBrink knew that sales of cider were going to fall dramatically in 2019 because Seattle Cider's largest distributor already had enough inventory to last all of 2019 and beyond.  He also knew that Seattle Cider's profits were going to decline because he had promised the distributor that Seattle Cider would pay 100% of the costs necessary to move the huge backlog in inventory VandenBrink had built up. VandenBrink nonetheless provided Agrial with budgets showing steady growth in both sales and profits throughout 2019, even though he knew that the fundamental assumptions underlying such projections were false.  He did this so that Agrial would not learn that he had manipulated the 2018 EBITDA numbers and grow suspicious before the 2018 earn-out was paid.

32.    Relying on VandenBrink's false representations regarding Seattle Cider's 2018 EBITDA, his false projections for 2019, and the false reasons for the sudden drop in sales in April, on May 15, 2019, Agrial wired PNW Holdco an adjusted earn-out payment of more than $8.4 million.  The correct earn-out payment should have been $2,000,000, less adjustments, in accordance with the Purchase Agreement.  Upon information and belief, approximately $5.8 million of this payment went directly to VandenBrink.

33.    Once Agrial paid the inflated earn-out, the bottom fell out.  Having collected his millions, VandenBrink made good on his prior promise to the distributor. On May 17, 2019, just two days after VandenBrink received his millions, the distributor returned two full trucks of cider at a cost to Seattle Cider of $133,000 and it destroyed another $34,000 worth of product. VandenBrink had told Agrial that May 2019 sales would be $1.3 million, knowing this was false. In fact, May sales were only $347,000, the worst performance of any month since Agrial had purchased Seattle Cider.

COMPLAINT (No. 2:19-cv-1313) –8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

145368944.2

34.     Because VandenBrink put his own pecuniary interest above that of Seattle Cider, Seattle Cider's EBITDA in 2019 has plummeted.

35.     Agrial had an opportunity to sell Seattle Cider to a purchaser in 2019. Had Seattle Cider's sales merely stayed consistent, the sale would have gone forward. Instead, after the sudden collapse of Seattle Cider's revenue, the deal fell through, at substantial loss to Agrial.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT AGAINST VANDENBRINK**

36.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-35 above.

37.     VandenBrink and Seattle Cider entered into a valid employment agreement.

38.     Seattle Cider has performed all of its obligations under the Employment Agreement.

39.     VandenBrink breached the Employment Agreement by failing to act in the best interests of Seattle Cider and by failing to seek and obtain Agrial's approval before entering into the secret side deal with Seattle Cider's primary distributor.

40.     As a direct and proximate result of VandenBrink's breaches of his duties under the Employment Agreement, Seattle Cider has and will continue to sustain damages in excess of $75,000, exclusive of interest and costs.

**SECOND CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY AGAINST VANDENBRINK**

41.     Plaintiffs reallege and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-40 above.

42.     As an officer of Seattle Cider, VandenBrink had the duties of a fiduciary and was obliged to act at all times in the best interest of Seattle Cider and its member, Agrial.

43.     VandenBrink breached his fiduciary duties by entering into a secret side deal to artificially increase Seattle Cider's EBITDA in 2018 and by making multiple misrepresentations

COMPLAINT (No. 2:19-cv-1313) –9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

145368944.2

to conceal his self-dealing, thereby harming Seattle Cider's business, causing a potential sale to fall through, and personally enriching himself.

44.    As a direct and proximate result of VandenBrink's breach of his fiduciary duties, Seattle Cider and Agrial have and will continue to sustain damages in excess of $75,000, exclusive of interest and costs.

### THIRD CAUSE OF ACTION
### BREACH OF THE DUTY OF LOYALTY AGAINST VANDENBRINK

45.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-44 above.

46.    As an employee of Seattle Cider, VandenBrink had a duty of loyalty to Seattle Cider and was obliged to act at all times in the best interests of Seattle Cider.

47.    VandenBrink breached his duty of loyalty by entering into a secret side deal to artificially increase Seattle Cider's EBITDA in 2018 and by making multiple misrepresentations to conceal his self-dealing, thereby harming Seattle Cider's business, causing a potential sale to fall through, and personally enriching himself.

48.    As a direct and proximate result of VandenBrink's breach of his duty of loyalty, Seattle Cider and Agrial have and will continue to sustain damages in excess of $75,000, exclusive of interest and costs.

### FOURTH CAUSE OF ACTION
### MISREPRESENTATION AGAINST VANDENBRINK AND PNW HOLDCO

49.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-48 above.

50.    VandenBrink made material misrepresentations of fact to Agrial, including misrepresentations of Seattle Cider's true sales and EBITDA.  VandenBrink fraudulently concealed his secret side agreement with Seattle Cider's largest distributer by making multiple misrepresentations once signs of his self-dealing began to emerge.

COMPLAINT (No. 2:19-cv-1313) –10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

145368944.2

1    51.    VandenBrink was acting as the agent for PNW Holdco when he made these

2  misrepresentations and fraudulently concealed his self-dealing.

3    52.    As a direct and proximate result of Defendants' misrepresentations and

4  fraudulent concealment, Seattle Cider and Agrial have and will continue to sustain damages in

5  excess of $75,000, exclusive of interest and costs.

6                          **FIFTH CAUSE OF ACTION**
   **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST**
7                     **VANDENBRINK AND PNW HOLDCO**

8    53.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the

9  allegations in paragraphs 1-52 above.

10    54.    The parties to the Purchase Agreement, including VandenBrink and PNW

11 Holdco, had a duty of good faith and fair dealing in performing their obligations under the

12 Purchase Agreement.

13    55.    VandenBrink and PNW Holdco breached that duty by falsifying Seattle Cider's

14 true sales and EBITDA and by fraudulently concealing their misconduct so as to enrich

15 themselves in an amount not justified under the Purchase Agreement.

16    56.    Plaintiffs have been injured as a proximate result of VandenBrink's and PNW

17 Holdco' breach of the covenant of good faith and fair dealing in an amount in in excess of

18 $75,000, exclusive of interest and costs.

19                          **SIXTH CAUSE OF ACTION**
   **UNJUST ENRICHMENT AGAINST VANDENBRINK AND PNW HOLDCO**
20

21    57.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the

22 allegations in paragraphs 1-56 above.

23    58.    PNW Holdco and VandenBrink have been unjustly enriched by virtue of

24 VandenBrink's misrepresentations regarding Seattle Cider's 2018 EBITDA and his fraudulent

25 concealment of his self-dealing.

26

COMPLAINT (No. 2:19-cv-1313) –11

145368944.2

59.     PNW Holdco and VandenBrink have received funds of approximately $6.8 million that they did not earn and are not entitled to keep.

60.     VandenBrink and PNW Holdco should be required to return to Agrial the amounts by which they have been unjustly enriched, or such amounts should be held in constructive trust for the benefit of Agrial.

## SEVENTH CAUSE OF ACTION
## CIVIL CONSPIRACY AGAINST VANDENBRINK AND PNW HOLDCO

61.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-60 above.

62.     VandenBrink and PNW Holdco have engaged in an unlawful conspiracy to commit the acts alleged in this complain and have engaged in this conspiracy to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.

63.     VandenBrink and PNW Holdco both took affirmative steps in furtherance of the conspiracy.  Because of the active steps taken by VandenBrink and PNW Holdco to conceal their scheme to present false EBITDA numbers to Agrial, the individual acts and steps taken by each defendant in furtherance of the conspiracy is peculiarly within their knowledge.

64.     As a result of this unlawful civil conspiracy, Seattle Cider and Agrial have suffered damages in an amount to be proven at trial.

## EIGHT CAUSE OF ACTION
## DECLARATORY JUDGMENT AGAINST VANDENBRINK AND PNW HOLDCO

65.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-64 above.

66.     Seattle Cider did not in truth achieve the minimum EBITDA target in 2018 necessary to trigger the excess payment and thus PNW Holdco was not entitled to the increased earn-out payment under the Purchase Agreement and was overpaid by approximate $6.8 million. Agrial and Seattle Cider have a future minimum earn-out payment of $6,000,000 scheduled for payment in 2021, following the 2020 fiscal year.  Agrial and Seattle Cider are entitled to a

COMPLAINT (No. 2:19-cv-1313) –12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

145368944.2

1   judicial determination that PNW Holdco was entitled to only $2,000,000, less adjustments, for

2   the first earn-out payment and, as such, Agrial and Seattle Cider may offset any future payments

3   due under the Purchase Agreement by an amount equal to the overpayment for the 2018 earn-

4   out.

5       67.     An actual and justiciable controversy exists between Agrial, on the one hand, and

6   VandenBrink and PNW Holdco, on the other, regarding Agrial's future obligations under the

7   Purchase Agreement.

8       68.     A judicial determination is necessary and appropriate at this time so that Agrial,

9   on the one hand and VandenBrink and PNW Holdco, on the other, may determine their

10  respective rights and obligations under the Purchase Agreement.

11                              **JURY DEMAND**

12      Pursuant to Federal Rule of Civil Procedure 38(b), plaintiffs demand a trial by jury as to

13  all issues so triable in this action.

14                              **PRAYER FOR RELIEF**

15      WHEREFORE, plaintiffs pray for the following relief:

16      A.      For judgment in favor of plaintiffs, and against defendants, to recover damages in

17  such amounts as may be proven at trial;

18      B.      For a declaratory judgment that PNW Holdco was only entitled to the $2,000,000,

19  minimum earnout, less adjustments, for the first earn-out payment and Agrial may offset any

20  future payments due under the Purchase Agreement by an amount equal to the overpayment for

21  the 2018 earn-out;

22      C.      For a declaratory judgment that any damages awarded to Seattle Cider or Agrial

23  may be freely distributed by the companies to their parents or members and that VandenBrink

24  and PNW Holdco are not entitled to any portion of any such distributions.

25      D.      For judgment against defendants for plaintiffs' costs of suit, including plaintiffs'

26  reasonable attorneys' fees; and

COMPLAINT (No. 2:19-cv-1313) –13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

E.     For such other relief as the Court may deem just and proper.

DATED:  August 21, 2019

By:  s/ James Sanders
By:  s/ Emily A. Bushaw
James Sanders #24565
Emily A. Bushaw #41693
Attorneys for Plaintiffs Seattle Cider Company,
LLC; Two Beers Brewing Company, LLC; and
Agrial USA, Inc.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:  JSanders@perkinscoie.com
        EBushaw@perkinscoie.com

COMPLAINT (No. 2:19-cv-1313) –14

145368944.2